THE SAVANNAH STREET RAILROAD *v.* FICKLIN.

1. In so far as the thirty-three requests to charge, presented by the defendant's counsel, were legal and pertinent, they were covered by the general charge of the court, of which no complaint was made and which submitted the case to the jury with the utmost fairness to the defendant. In other respects, these requests were illegal, not warranted by the evidence, or inapplicable to the issues involved, and many of them were inappropriate because completely ignoring the plaintiff's right to a partial recovery in the event he was guilty of contributory negligence. The refusal to give the requests, singly or collectively, was no cause for new trial.

2. The verdict, although it could have been for the defendant, was
not unwarranted by the evidence, and there was no error in re-
fusing to set it aside.

July 16, 1894.

Action for damages.   Before Judge MacDonell.   City
court of Savannah.   July term, 1893.

Ficklin sued the railroad company for damages, and
obtained a verdict for $500.   Defendant's motion for a
new trial was overruled.   The evidence for the plaintiff
was, in brief, as follows : About ten or eleven o'clock
in the morning, he rode a horse northward on Jefferson
street in Savannah, and turned eastward into Bay street.
On the south side of Bay street, between defendant's
track and a building in process of construction, was a
pile of lumber and bricks ; and between this obstruction
and the railroad track was a space three or four feet
wide.   Plaintiff was in this space, having gone about
twenty yards on Bay street, when he discovered a car
nearly upon him, coming from the east and running at
about six miles an hour.   Feeling it was dangerous to try
to cross the track, and not believing the space he was in
was wide enough for the car to pass him safely, he
turned his horse to go back to Jefferson street.   In the
act of turning, the horse was struck by the car and plain-
tiff was knocked off senseless, sustaining dislocation of
the shoulder and bruises on the head.   The motorman
made no effort to stop the car until the moment before
it struck plaintiff; and the car ran across Jefferson
street and to the middle of the next block before it
stopped.   Plaintiff did not hear the gong of the car,
though his witnesses testified it was sounded.   He be-
lieved the motorman could have slackened up the car
after first discovering him, but it was not slackened up
until it struck the horse.   The horse was not frightened.
As plaintiff came into Bay street, a large loaded truck
was going northeast ahead of him ; it was between him

and the car, and it crossed the track safely, missing the car about two feet. Another loaded truck was on the track ahead of the car but going in the same direction with it. The driver of this truck heard the gong, and drove off the track just in time to avoid being struck. These trucks prevented the plaintiff from seeing the car sooner. The track curved in towards Jefferson street about where he was struck.

The evidence for defendant was, in brief: The motorman sounded the gong to warn plaintiff not to try to cross the track. Had he remained where he was, between the track and the pile of lumber and bricks, and not tried to turn his horse, the car would have passed him safely, the space being of sufficient width. He wheeled his horse when the car was right on him, too late for it to be stopped. The electric current had been thrown off and the speed of the car slackened, as usual, in approaching Jefferson street, it being a rule of the defendant to go carefully toward that street; and the car was not going more than four miles an hour. It could not have run faster on the curve without leaving the track. The city ordinance allowed it to run as fast as six miles an hour. The motorman saw plaintiff was in danger, and put on brakes all he could, but it was impossible to stop the car in time. He did not reverse the car, because he had not time to do so. It requires several movements, occupying several moments of time, to reverse a car. The car stopped about the middle of Jefferson street. When plaintiff fell, his horse ran down that street; and he picked up his saddle and ran after the horse. By city ordinance the car had the right of way, and it was unlawful to obstruct the track after due notice by the car-bell.

SAUSSY & SAUSSY, for plaintiff in error.
McALPIN & LAROCHE, *contra.*

LUMPKIN, Justice.

We have carefully read and thoroughly considered the evidence in this case, a condensation of the material parts of which appears in the reporter's statement. As a result of our deliberations, we have concluded to allow the verdict to stand. The jury might properly have found for the defendant, but we cannot say that their finding for the plaintiff was unwarranted, or that the trial judge erred in refusing to set the verdict aside. The charge of the court was full and accurate, and submitted the case to the jury with the utmost fairness to the defendant. Indeed, no complaint whatever was made of it in the motion for a new trial. The defendant's counsel presented to the court thirty-three written requests to charge the jury, all of which were refused. In the midst of the overwhelming labor with which this court is burdened, we cannot, for the absolute want of time, set out and discuss these requests in detail. If we could, it would hardly be profitable. The pertinent and legal principles of law embraced in these requests were covered by the general charge of the court. In other respects, which are indicated in the head-note, the requests were of such character that the court did right in refusing to give them in charge. Upon a full review of the whole case, we find no legal reason for granting a new trial.　　　　　*Judgment affirmed.*